**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TYRONE K. WHITE,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **HARVARD SECURITY, LLC,** | : | **No. 25-cv-0622** |
| *Defendant.* | : | |

**MEMORANDUM**

**KENNEY, J.**                                      **January 27, 2026**

Defendant moves to dismiss Plaintiff's *pro se* Complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). *See* ECF No. 25 at 1. Additionally, Plaintiff moves for appointment of Counsel. *See* ECF No. 33 at 1. For the reasons set forth below, the Court will **GRANT** Defendant's Motion to Dismiss (ECF No. 25). The Court will dismiss the Complaint **WITHOUT PREJUDICE**. The Court will **DENY** Plaintiff's Motion to Appoint Counsel (ECF No. 33).

## I.   BACKGROUND

### A.  Factual Background

The Court draws the following facts from the Complaint and its attachments and assumes them to be true at the motion-to-dismiss stage. *See City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). Plaintiff states he is a Black man who worked for Defendant Harvard Protection Services, LLC as a security guard for some time.[1] *See* ECF No. 1 at 2–3. He alleges that Defendant began engaging in discriminatory acts against him in February 2024. *Id.* at 3. As reflected in grievance letters Plaintiff attaches to his Complaint, Plaintiff

---

[1] Though Plaintiff refers to Defendant as Harvard Security, LLC, Defendant clarifies that it is properly designated as Harvard Protection Services, LLC. *See* ECF No. 25-1 at 6.

principally takes issue with three aspects of his work environment—his duties, Defendant's delayed response to a broken security gate, and his work schedule. *See id.* at 7–8, 13–14.

With respect to his duties, Plaintiff alleges that he performed additional work without help from other employees, such as cleaning bathrooms and bringing in heaters and paper towels. *Id.* at 13–14. He also states that he was the only security guard who would take out the trash. *See id.* at 13, 15. In particular, in his opposition to the Motion to Dismiss, Plaintiff names two other guards from whom he received no assistance—a woman referred to as Ms. Hasonna (also spelled Ms. Hassonna) and a man Plaintiff describes as a "light color blk. male" named Mr. Otis, ECF No. 32 at 1; *see also* ECF No. 29 at 1. Likewise, in a supplemental filing at the motion-to-dismiss stage, Plaintiff states that his "white american" manager, Mr. Tobin, provided "inadequate . . . support for security guards on site complex." ECF No. 29 at 1.

With respect to the security gate, Plaintiff alleges that the gate was broken for a long period of time and that Plaintiff would physically lift the gate to operate it. ECF No. 1 at 7–8. And with respect to his work schedule, Plaintiff states he worked double shifts, was scheduled to work an additional hour without being asked, was ultimately given a day off after requesting it, *id.* at 3, 8, and later arranged for another employee to cover the additional hour, ECF No. 6 at 2; *see also* ECF No. 29 at 1 (stating that Mr. Tobin imposed mandatory 16-hour shifts and told Plaintiff he would fire any guards who called out for the mandatory shifts).

Plaintiff also raises several additional issues, including a general "[l]ack of communication[]" from supervisors—and specifically from Mr. Tobin, children running through the complex in which he worked, and his final paychecks being delayed. ECF No. 1 at 3, 11, 17; ECF No. 29 at 1. As a result of the above conduct, Plaintiff resigned from his position on December

16, 2025, and he states that his resignation was "under duress" and "of a necessitous, and compelling nature." ECF No. 1 at 3.

### B. Procedural History

In connection with the above events, Plaintiff initiated an employment discrimination action against Defendant via a form complaint on February 4, 2025.[2] *See* ECF No. 1 at 1–6. On the form complaint, Plaintiff selected that he was bringing his action on the basis of race, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. See id.* at 1, 3. Plaintiff further selected that his suit was based on Defendant's retaliation; Defendant's failure to stop harassment; and Plaintiff's resignation "under duress," which the Court construes to be a constructive discharge claim. *See id.* at 3. Plaintiff indicated that he is seeking the following relief: "injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees." *Id.* at 5. He reports that he received a Notice of a Right to Sue Letter from the Equal Employment Opportunity Commission on November 14, 2025. *Id.* at 4.

After Plaintiff brought this action, he filed an affidavit of service on August 11, 2025, stating that he served a summons on "Mr. Rich Tobin . . . by priority U.S. mail." ECF No. 19 at 1. The Court then ordered Plaintiff to serve Defendant via certified mail with restricted delivery on or before September 23, 2025, and issue proof of service on or before October 7, 2025. ECF No. 20 at 1. On September 30, 2025, Plaintiff filed printouts of webpages from the U.S. Postal Service stating that two packages were delivered and picked up at a post office in Philadelphia, PA. ECF

---

[2] Plaintiff previously initiated other suits under Title VII. *See White v. Marshalls Distrib. Ctr.*, No. 11-cv-02237 (E.D. Pa.); *White v. Shoprite of Cheltenham*, No. 13-cv-03290 (E.D. Pa.); *White v. Bethesda Project Inc.*, No. 16-cv-02309 (E.D. Pa.); *cf. also White v. Phila. Hous. Auth.*, No. 18-cv-3291 (E.D. Pa.) (suit under the Pennsylvania Human Relations Act).

No. 21 at 1, 3. On October 1, 2025, Plaintiff filed a similar set of webpages on the docket. ECF No. 22 at 1–2.

Counsel for Defendant appeared on the docket on October 20, 2025. ECF No. 23 at 1. That same day, Defendant moved to dismiss Plaintiff's Complaint for insufficient service of process and failure to state a claim under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). ECF No. 25. The Court then extended Plaintiff's deadline to respond until December 8, 2025, *see* ECF No. 30 at 1, and Plaintiff thereafter filed two responses to Defendant's Motion, *see* ECF Nos. 31, 32, in addition to other filings containing supplemental factual allegations related to this action, *see* ECF Nos. 6, 29.

## II.    <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 12(b)(5), a defendant may move to dismiss an action for insufficient service of process. Fed. R. Civ. P. 12(b)(5). To avoid dismissal, a plaintiff must comply with the service requirements set forth by Federal Rule of Civil Procedure 4, including the requirement to properly serve a defendant within 90 days after the complaint is filed. *See* Fed R. Civ. P. 4(m). If service is not made within this window, the court must dismiss the action without prejudice or order service within a specified time, unless there is "good cause" for the failure to properly serve. *See id.*

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether a complaint states a claim, the Court must accept "all well-pleaded allegations as true and draw all reasonable inferences in

favor of the plaintiff." *City of Cambridge Ret. Sys.*, 908 F.3d at 878. Those allegations do not need to render the plaintiff's claim probable, but there must be more than a "possibility that a defendant has acted unlawfully." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

When a plaintiff proceeds *pro se*, courts must construe the plaintiff's allegations liberally. *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011). However, *pro se* plaintiffs must generally follow the same rules of procedure as other litigants, including to properly serve the defendants. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III.    DISCUSSION

Defendant moves to dismiss Plaintiff's Complaint for insufficient service of process and failure to state a claim. *See* ECF No. 25-1 at 14. Because Plaintiff fails to state a claim, the Court will dismiss his Complaint without prejudice. And because the Court will dismiss the Complaint on that basis, it need not definitively resolve Defendant's argument about insufficient service of process. However, if Plaintiff files an amended Complaint, he is directed to be mindful of the service requirements under Federal Rule of Civil Procedure 4, which do not appear to be met. Additionally, Plaintiff moves for appointment of counsel, which this Court will deny for the reasons set forth below. *See* ECF No. 33 at 1.

### A.  Failure to State a Claim

Plaintiff brings claims under Title VII for retaliation, harassment, and constructive discharge on the basis of race. *See* ECF No. 1 at 1, 3. Though a plaintiff is not required to establish a prima facie case under Title VII at the motion-to-dismiss stage, the complaint's allegations must "raise a reasonable expectation that discovery will reveal evidence of [each] necessary element"

of the claim. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (alteration in original) (citation omitted). Plaintiff's Complaint fails to do so.

### 1. *Retaliation*

To make out a case of retaliation, a plaintiff must establish that he "engaged in a protected activity," he "suffered an adverse employment action," and that "there was a causal connection between . . . the protected activity and the adverse action." *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017).

Plaintiff's Complaint and attachments do not raise a reasonable expectation that discovery will reveal evidence of retaliation based on race. First, though Plaintiff appears to have sent his employer a number of grievances, *see* ECF No. 1 at 7–17; ECF No. 6 at 1–2, a grievance amounts to protected activity only if it relates to "discrimination prohibited by Title VII." *Davis v. City of Newark*, 417 F. App'x 201, 203 (3d Cir. 2011) (per curiam). "A general complaint of unfair treatment" does not suffice. *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995); *see also Davis*, 417 F. App'x at 203. Here, Plaintiff's grievances take issue generally with his duties, hours worked, and a lack of communication, but virtually nothing connects those grievances to race or another basis for discrimination under Title VII. The grievances, for instance, generally take issue with the broken security gate. *See* ECF No. 1 at 7, 9. And where Plaintiff takes issue with his duties, his chief complaint appears to be that other departments are not helping the security guards. *See id.* at 13 ("Housekeeping department . . . and PGW should get necessary help for security."); *id.* at 14 ("I get no help from management/Housekeeping department.").

Virtually the only mention of race appears in Plaintiff's supplemental filings at the motion-to-dismiss stage, where he states that two guards did not help him take out the trash, one of whom was a "light color blk. male" named Mr. Otis. *See* ECF No. 31 at 1; *accord* ECF No. 32 at 1; *see also* ECF No. 29 at 1. Plaintiff also states in a supplemental filing that his manager was a "white

6

american." ECF No. 29 at 1. Even construing the pleadings liberally, these scant references to race and color in supplemental filings are insufficient to reasonably suggest that Plaintiff's grievances relate to "discrimination prohibited by Title VII." *Davis*, 417 F. App'x at 203.

Even if the grievance letters constitute protected activity, these materials do not raise a reasonable expectation of a connection between Plaintiff's protected activity based on race and an adverse employment action. That requires a plaintiff to establish "some 'disadvantageous' change in an employment term or condition." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024). In supplemental filings, Plaintiff points to changes in his work schedule and his white supervisor's refusal to fix the broken security gate as evidence of retaliation. But his allegations do not suffice to reasonably connect these acts to his grievance letters. Likewise, though harassment and constructive discharge can qualify as an adverse employment action, *Clegg v. Falcon Plastics, Inc.*, 174 F. App'x 18, 27 (3d Cir. 2006), Plaintiff's submissions do not reasonably suggest there will be evidence of either, as discussed below. *See infra* Section III.A.2–3. Accordingly, Plaintiff fails to state a claim for retaliation.[3]

### 2. *Harassment*

Plaintiff also states that he brings suit based on Defendant's failure to stop harassment. ECF No. 1 at 3. Claims of racial harassment under Title VII are treated as hostile work environment claims. *See Kengerski v. Harper*, 6 F.4th 531, 534, 537 (3d Cir. 2021). To prevail on a hostile work environment claim based on race, a plaintiff must show that he suffered intentional discrimination because of his race, the "discrimination was severe or pervasive," "the discrimination detrimentally affected [him]," a reasonable person would be detrimentally affected, and "the

---

[3] For similar reasons, to the extent Plaintiff's complaint can be construed as bringing a race discrimination claim under Title VII, that claim would also fail because Plaintiff's allegations do not reasonably suggest that any adverse employment action was based on race.

existence of respondeat superior liability." *Sousa v. Amazon.com, Inc.*, No. 22-3043, 2023 WL 7486751, at *2 (3d Cir. Nov. 13, 2023) (per curiam) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)).

Plaintiff's submissions do not create a reasonable expectation that discovery will reveal evidence of harassment on the basis of race. First, as noted above, Plaintiff's grievances make virtually no mention of race. Instead, Plaintiff's submissions generally take issue with his work environment. He alleges that: there was a lack of communication from supervisors; a security gate was broken, requiring him to physically lift the gate; he performed additional duties compared to other employees and other departments, such as taking out the trash and cleaning bathrooms; his final paychecks were delayed; and he was scheduled to work an additional hour without being asked. *See* ECF No. 7–8, 11, 13–14, 17. While Plaintiff highlights these as frustrations with his work environment, there is little in Plaintiff's submissions to suggest that this conduct occurred because of race.

However, even if these allegations reflected racial discrimination, Plaintiff's submissions do not create a reasonable expectation that evidence would show that such discrimination was "severe or pervasive," as required for a hostile work environment claim. *See Mandel*, 706 F.3d at 167. For discrimination to be pervasive, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult." *See Culler v. Sec'y of U.S. Veterans Affs.*, 507 F. App'x 246, 249 (3d Cir. 2012) (citation omitted). Plaintiff's allegations of double shifts, a broken gate, and additional work duties do not reasonably indicate such "intimidation, ridicule, and insult." *See id.* Nor do these allegations reflect the type of "severe" discrimination that gives rise to a hostile work environment claim. *See Castleberry v. STI Grp.*, 863 F.3d 259, 265 (3d Cir. 2017) (reversing

dismissal of hostile work environment claim where "supervisor used a racially charged slur . . . accompanied by threats of termination").

In light of the above, Plaintiff's submissions do not create a reasonable expectation that discovery would produce evidence of racial discrimination or that such discrimination was severe or pervasive. Accordingly, Plaintiff fails to state a harassment claim.

### 3. *Constructive Discharge*

Lastly, Plaintiff alleges he resigned from his position "under duress," and that his resignation was "of a necessitous, and compelling nature." ECF No. 1 at 3. The Court construes Plaintiff's allegations of being forced to resign as a constructive discharge claim.

To prevail on a constructive discharge claim, the plaintiff must show that "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Mandel*, 706 F.3d at 169 (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996)). Courts consider "a number of factors," such as "whether the employee was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, involuntarily transferred," assigned altered job duties, or "given unsatisfactory job evaluations." *Id.* at 170. Because both focus on the conditions of the overall work environment, constructive discharge and hostile work environment claims are similar, though not identical. *See id.* (analyzing hostile work environment and constructive discharge claims separately and directing district court, on remand, to "review the constructive discharge claim in light of evidence of a hostile work environment").

Here, nothing suggests that Plaintiff experienced working conditions based on race that were "so intolerable that a reasonable person subject to them would resign." *Id.* at 169. The communication issues, broken security gate, and other issues highlighted by Plaintiff appear to be the type of "frustrations, challenges, [and] disappointments" that, though they may be legitimate,

do not suffice for a constructive discharge claim. *See Tunis v. City of Newark*, 184 F. App'x 140, 143 (3d Cir. 2006); *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir. 1992). And though Plaintiff states he worked long hours—alleging he worked double shifts, *see* ECF No. 1 at 8—nothing suggests he was required to work these hours due to his race or that such double shifts rose to the level of intolerability required for constructive discharge. Indeed, Plaintiff himself reports that he was approved for a day off when he complained, *id.*, and that he was able to separately arrange for coverage by another employee for some of his hours, ECF No. 6 at 2.

Because Plaintiff's submissions do not reasonably suggest that his work conditions were "so intolerable that a reasonable person subject to them would resign," *Mandel*, 706 F.3d at 169, he has failed to state a constructive discharge claim.

### B.  Insufficient Service of Process

Because Plaintiff has failed to state a claim, the Court need not conclusively resolve Defendant's arguments regarding improper service. Nonetheless, this Court notes that Plaintiff did not appear to comply with the Court's order to serve Defendant specifically by the method of certified mail with restricted delivery. ECF No. 20 at 1. Should Plaintiff file an amended Complaint, he is directed to be mindful of the service requirements under Federal Rule of Civil Procedure 4 and those identified by this Court.

### C.  Appointment of Counsel

Lastly, Plaintiff requests "attorney assistance," *see* ECF No. 33 at 1, which the Court construes as a motion for appointment of counsel. Under Title VII, courts have discretion to

appoint counsel "in such circumstances as the court may deem just."[4] 42 U.S. Code § 2000e-5(f)(1).

The Third Circuit has not articulated the standard for evaluating motions to appoint counsel under Title VII. Recently, it suggested that Title VII's standard mirrors the one applied when a litigant proceeds in forma pauperis and requests counsel. *See Samuel*, 2024 WL 4003088, at *2 & n.6 (assuming that the same test applies for appointment of counsel whether plaintiffs proceed in forma pauperis or under the Fair Housing Act's appointment-of-counsel provisions and noting that the Fair Housing Act and Title VII contain analogous appointment-of-counsel provisions). Under that standard, courts first evaluate as a threshold matter whether the plaintiff's claims have "arguable merit." *See id.* at *2. If that threshold requirement is satisfied, courts examine additional factors, such as the litigant's ability to present the case and retain counsel, the complexity of the legal issues, and whether the case will need factual investigation and expert witnesses. *Id.*

Other Third Circuit cases, however, have suggested that the test for appointment of counsel under Title VII differs. *See Mentor v. Hillside Bd. of Educ.*, 428 F. App'x 221, 223 (3d Cir. 2011); *see also Gude v. Rockford Ctr. Inc.*, 393 F. App'x 838, 839 (3d Cir. 2010) (per curiam). Nonetheless, these cases, too, have focused on the merits of the plaintiff's case. *See Gude*, 393 F. App'x at 839; *Ficken v. Alvarez*, 146 F.3d 978, 979–80 (D.C. Cir. 1998) (cited by *Mentor*, 428 F. App'x at 223–24 as "enumerating [the] test to apply in ruling on a motion for counsel under § 2000e-5(f)(1)").

---

[4] Courts also have discretion to appoint counsel for litigants proceeding in forma pauperis. *See* 28 U.S.C. § 1915(e). However, Plaintiff is not proceeding in forma pauperis, as he paid the filing fee. Regardless, even if Plaintiff were eligible for counsel under § 1915(e), a number of circuits have applied the same standard to determine whether to appoint counsel under § 1915(e) and Title VII. *See Samuel v. Delaware Cnty. Hous. Auth.*, No. 23-3272, 2024 WL 4003088, at *2 nn.5–6 (3d Cir. Aug. 30, 2024), *cert. denied*, 145 S. Ct. 1187 (2025).

As pled, Plaintiff's complaint lacks arguable merit. As discussed above, *see supra* Section III.A, Plaintiff's allegations fail to meaningfully connect his claims or resignation to race, and the frustrations with his employment that he alleges were not the type of severe or pervasive conduct or intolerable working conditions that constitute harassment or constructive discharge. And even if this Court were required to consider other factors bearing on the appointment of counsel, such as Plaintiff's ability to represent himself, those factors do not overcome the lack of merit in Plaintiff's case as pled. Accordingly, the Court declines to appoint counsel here.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, this Court will **GRANT** Defendant's Motion (ECF No. 25). Plaintiff's Complaint will be dismissed **WITHOUT PREJUDICE**. The Court will **DENY** Plaintiff's Motion for Appointment of Counsel (ECF No. 33). An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**
_____
**CHAD F. KENNEY, JUDGE**