## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYRONE K. WHITE,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **HARVARD SECURITY, LLC,** | : | **No. 25-cv-0622** |
| *Defendant.* | : | |

### MEMORANDUM

**KENNEY, J.**                                                      **May 19, 2026**

There are three motions pending before the Court: (1) Defendants' Motion to Dismiss Plaintiff's Amended *Pro Se* Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ( ECF No. 41); (2) Plaintiff's Motion to Proceed (ECF No. 45); and (3) Plaintiff's Motion Not to Dismiss (ECF No. 46).   For the reasons stated below, Defendants' Motion to Dismiss the will be **GRANTED**, Plaintiff's Motion to Proceed will be **DENIED**, Plaintiff's Motion Not to Dismiss will be construed as an Opposition to Defendants' Motion to Dismiss,[1] and the Amended Complaint will be **DISMISSED with prejudice**.

### I.        INTRODUCTION

Plaintiff initiated the above-captioned lawsuit by filing a form complaint against Harvard Security, LLC ("Harvard Security") on February 4, 2025.  ECF No. 1.  Plaintiff's original complaint (ECF No. 1) was dismissed without prejudice.  ECF No. 36 at 1.  As part of the Court's Order, Plaintiff was afforded thirty (30) days to file an amended pleading.  *Id.*   The Court later extended this deadline upon Plaintiff's request.  ECF Nos. 37–38.

---

[1] *Infra* at Part I.

1

On March 25, 2026, Plaintiff filed an Amended Complaint naming Harvard Protective Services, LLC ("HPS") and Mr. Rich Tobin, contract manager, (collectively, "Defendants") as Defendants. ECF No. 39 at 2–3. Plaintiff's Amended Complaint sets forth claims for race discrimination and harassment in violation of the First Amendment of the U.S. Constitution, and Title VII. *Id.* at 3–5. Plaintiff seeks "appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees." *Id.* at 5.

On April 27, 2026, Plaintiff filed a Notice and Request for an Extension of Time to Respond to the Motion to Dismiss. ECF No. 42. Plaintiff informed the Court that Defendants had served a copy of the Motion to Dismiss to the wrong address. *Id.* at 1. Indeed, Defendants' Certificate of Service included a typographical error in Plaintiff's address. *See* ECF No. 41-3 at 1. To ensure that Plaintiff received ample time to respond to the Motion, the Court (1) directed Defendants to re-serve Plaintiff with a copy of the Motion on or before April 29, 2026; and (2) granted Plaintiff until May 15, 2026 to respond to the Motion. ECF No. 43. The Court noticed Plaintiff that if he failed to respond to the Motion by that date, the Court would consider the merits of Defendants' Motion without a response from Plaintiff. *Id.*

The next day, Plaintiff filed a Motion to Proceed. ECF No. 45. Therein, Plaintiff moves the Court to "proceed with amended replies" and asks the Court to approve "Plaintiff's relief." *Id.* at 7.[2] Plaintiff thereafter responded to Defendants' Motion to Dismiss by filing a document styled

---

[2] In addition, Plaintiff has attached to the Motion a copy of the original summons issued by the Clerk of Court for Defendant HPS, an Affidavit of Service, and his previous Notice regarding Defendants' improper service of the Motion to Dismiss that has already been addressed by the Court. *Id.* at 2–5. Accordingly, to the extent that the Motion to Proceed requests any relief, the Court will deny the Motion.

"Motion Not to Dismiss." ECF No. 46. This document repeats a majority of Plaintiff's allegations that he was harassed, treated differently, "by race/supervisor reporting" contained in the Amended Complaint. *Id.* at 1. Because Plaintiff is *pro se* and because the Motion (ECF No. 46) does not seek relief other than it opposes dismissal of the Amended Complaint, the Court will construe the Motion as an Opposition to Defendants' Motion to Dismiss and consider it below. Accordingly, the Motion is fully briefed and will be considered on the basis of the submissions and without oral argument.

## II.     **BACKGROUND**[3]

The Court writes for the benefit of the Parties and assumes familiarity with the underlying facts of the case. *See* ECF No. 35 at 1–3. This case arises from Plaintiff Tyrone K. White's allegations that he made repeated complaints to his employer about a broken gate at the construction site where he worked. *See* ECF No. 39 at 4.

Plaintiff alleges that he has been employed with HPS since the company "officially began on January 5, 2024" as a security officer. *See id.* As part of his duties, Plaintiff worked at a construction site located between 9th Street and Diamond Street (the "Jobsite"). *Id.* Beginning on June 3, 2024, he began reporting to HPS Contract Manager, Defendant Tobin, that the entrance gate to the Jobsite was broken. *Id.* Because of this, several children had gained access to the Jobsite at night. *Id.* According to Plaintiff, despite his communications to Tobin regarding the broken gate, nothing was done. *Id.*

---

[3] The following facts are taken from Plaintiff's well-plead Amended Complaint and are assumed true for the purposes of resolving Defendants' Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

Later, when another HPS employees, Mr. Emir Salas, a Location Supervisor, made a similar report that the entrance gate was broken, it was fixed the very next day. *Id.* That is, on August 1, 2024, when Mr. Salas saw local children playing at the Jobsite at night, he quickly drove to the Jobsite, where the police made an official report stating that the children had accessed the Jobsite through the broken gate. *See id.* In response, Mr. Tobin fixed the broken entrance gate the very next day. *Id.*

Plaintiff alleges that HPS and Mr. Tobin quickly responded to Mr. Salas's report about the entrance gate and ignored Plaintiff's repeated reports on account of *race*. *Id.* at 4–5. Plaintiff, who identifies as a Black man, claims that his reports went unanswered because he is Black. *See id.* Whereas, the reports of Mr. Salas, who is Puerto Rican, were quickly addressed. *See id.* Plaintiff alleges that Mr. Tobin's swift response to Mr. Salas is evidence that he was treated differently because of his race. *See id.* Plaintiff's lawsuit followed.

### III.    <u>LEGAL STANDARD</u>

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether a complaint states a claim, the Court must accept "all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018) (citing *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)). Those allegations do not need to render the plaintiff's claim probable, but there must be more than a "possibility that a defendant has acted unlawfully." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). As relevant here, where a plaintiff is proceeding *pro se*, courts must liberally construe

the factual allegations contained in the plaintiff's complaint.  *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011).

### IV.    <u>DISCUSSION</u>

Defendants have moved to dismiss Plaintiff's Amended Complaint in its entirety with prejudice on the ground that Plaintiff has (1) failed to state a claim ; and (2) failed to comply with the service requirements imposed by Rule 4(m).  ECF No. 41-1 at 1–16, 16 n.9.  However, as discussed *infra* at Part IV(C), the Court need not meaningfully address Defendants' arguments regarding proper service in light of the pleading deficiencies identified below.

#### A.  The Amended Complaint Must be Broadly Construed

As an initial matter, Plaintiff is proceeding *pro se*.  *See supra* at Part I.  Accordingly, the Court must broadly construe the factual allegations contained in Plaintiff's Amended Complaint. *See Liggon-Redding*, 659 F.3d at 265.  In his Amended Complaint, discussed *supra* at Part II, Plaintiff states generally that he suffered race discrimination and retaliation by Defendants when "[HPS] segregated employees by race, subjected [B]lack employee[s] to harassment, and engaged in disparate treatment against [B]lack employees regarding terms, conditions, and privileges or employment."  ECF No. 39 at 5.  Plaintiff specifically alleges that he suffered *harassment* when HPS responded to a Puerto Rian employee's report regarding the broken entrance gate.  Plaintiff alleges that he was treated differently, and his reports were not acted on for over a month, because he is Black.  *Id.*

Broadly construed, Plaintiff's Amended Complaint sets forth Title VII claims for disparate treatment, hostile work environment, and retaliation against Defendants.  *Id.* at 3–5.  The Court will now proceed to the merits.

### B. Failure to State a Claim

*First*, Defendants move to dismiss Plaintiff's Amended Complaint for failure to state a claim. ECF No. 41-1 at 11–16. Defendants argue, *inter alia*, that Plaintiff's Amended Complaint lacks clarity and fails to provide "any factual basis" for how Plaintiff's race influenced his conditions or status of employment with HPS. *Id.* at 12.

### 1. Plaintiff's Claims against Mr. Tobin Must Be Dismissed

As an initial matter, Defendants argue that Plaintiff's claims must be dismissed with prejudice against Mr. Tobin because Title VII does not authorize individual liability.[4] ECF No. 41-1 at 11–16, 16 n.9. With regard to individual liability for Mr. Tobin, Defendants direct the Court to the portions of the Amended Complaint in which Plaintiff expressly identifies HPS as his employer, not Mr. Tobin. *Id.* It is Defendants' position, on this basis, that any claims for disparate treatment, hostile work environment, or retaliation against Mr. Tobin, even construed as claims against him in his official capacity, would be duplicative of the same claims brought against HPS. *Id.*

Upon review, the Court will dismiss Plaintiff's Amended Complaint in its entirety against Mr. Tobin, with prejudice. As relevant here, the Third Circuit has consistently held that Title VII does not impose liability onto individual employees. *See, e.g.*, *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) ("[I]ndividual employees are not liable under Title VII." (citing *Sheridan*

---

[4] In addition, Defendants note that Plaintiff has failed to include any allegation in the Amended Complaint that he filed an Equal Employment Opportunity Commission ("EEOC") Charge against Mr. Tobin—warranting dismissal for lack of administrative exhaustion alone. *Id.* at 11 n.7. While it is true that administrative exhaustion is a condition precedent to bringing a Title VII claim, *see Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) ("A plaintiff 'must exhaust all required administrative remedies before bringing a claim for judicial relief.'" (quoting *Robinson v. Dalton,* 107 F.3d 1018, 1020 (3d Cir. 1997)), However, for the reasons discussed in Part III(B)(1), the Court need not reach Defendants' argument concerning the exhaustion of administrative remedies.

*v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996)). In his Amended Complaint, Plaintiff specifically alleges that while Mr. Tobin was a "Contract Manager," that HPS was Plaintiff's employer. ECF No. 39 at 3. Therefore, even assuming that Plaintiff has plausibly alleged that Mr. Tobin was his "supervisor" within the meaning of Title VII, Plaintiff's claims against Mr. Tobin would be duplicative of his claims asserted against his employer, HPS. *Id.* at 3–5. Accordingly, the Court will dismiss Plaintiff's Amended Complaint against Mr. Tobin with prejudice.

### 2. Hostile Work Environment

*Next*, Defendants argue that Plaintiff has failed to plausibly allege that he suffered a hostile work environment due to his race. ECF No. 41-1 at 12–15.

Title VII provides in relevant part that, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Hostile work environment claims differ from other Title VII claims in that "[a] hostile work environment claim 'is composed of a series of separate acts that collectively constitute one "unlawful employment practice"' and 'cannot be said to occur on any particular day.'" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–17 (2002)). That is, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 116 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

7

It is important to note, however, that "Title VII is *not* intended as a 'general civility code,' and requires that 'conduct must be extreme' to constitute the kind of 'change in the terms and conditions of employment' the statute was intended to target." *Burgess v. Dollar Tree Stores, Inc.*, 642 F. App'x 152, 155 (3d Cir. 2016) (emphasis added) (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998)).  Thus, plaintiffs must meet an exacting standard.

To survive a motion to dismiss on a hostile work environment claim under Title VII, plaintiffs must plausibly allege that they have (1) "suffered intentional discrimination because of [a protected characteristic][;]" (2) "the discrimination was severe or pervasive[;]" (3) "the discrimination detrimentally affected the plaintiff[;]" (4) "the discrimination would detrimentally affect a reasonable person in like circumstances[;]" and (5) "the existence of *respondeat superior* liability."  *Mandel*, 706 F.3d at 167 (3d Cir. 2013) (citation omitted)).  As relevant here, "[t]he 'severe or pervasive' standard is disjunctive and so 'a plaintiff need not show that her hostile working environment was both severe and pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions.'" *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 215 n.12 (3d Cir. 2017) (alteration added) (quoting *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010)).  District courts analyzing the plausibility of hostile work environment claims have been instructed by the Supreme Court to look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher*, 524 U.S. at 787–88.

Upon review, the Court will dismiss Plaintiff's hostile work environment claim.  Apart from Plaintiff's description of the broken entrance gate at the Jobsite, Plaintiff does plausibly

allege that he suffered severe *or* pervasive discrimination on the basis of his race.  Thus, Plaintiff has not plausibly alleged that he suffered discriminatory conduct that was either so frequent, or so severe, that it effectively altered the terms of Plaintiff's employment with HPS.  As Defendants point out, the Amended Complaint does not contain any allegations that Plaintiff was  subjected to jokes, comments, or other statements by anyone at HPS regarding his race whatsoever.  Plaintiff's only allegation is that his reports were not addressed as quickly as another employee's.  *See* ECF No. 39 at 4–5.  This is plainly insufficient to form the basis of a hostile work environment claim.

In sum, Plaintiff's amendments to his hostile work environment claim have not been fruitful.  Indeed, Plaintiff's hostile work environment claim set forth in his Amended Complaint suffers from the same deficiencies previously identified by the Court.  *See* ECF No. 35 at 9.  Therefore, Plaintiff has failed to plausibly allege that he was subjected to a hostile work environment by HPS.  Accordingly, Plaintiff's hostile work environment will be dismissed with prejudice.

### 3.  Retaliation

*Finally*, Defendants argue that Plaintiff's retaliation claim must be dismissed because Plaintiff has failed to plausibly allege that HPS discriminated against him.  ECF No. 41-1 at 14–15.

In addition to prohibiting unlawful discrimination in employment, Title VII prohibits an employer from retaliating against an employe because they "engaged in activity protected by Title VII" such as "participat[ing] in certain Title VII proceedings . . . [or] . . . oppos[ing] discrimination made unlawful by Title VII[.]"  *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006), *as amended* (Sept. 13, 2006) (citing *Slagle v. Cnty. of Clarion,* 435 F.3d 262, 266 (3d Cir. 2006).  As

the Supreme Court has observed, Title VII's anti-retaliation provision works to "prohibit[] employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)).

To survive a motion to dismiss on a retaliation claim under Title VII, the plaintiff must plausibly allege that (1) "[they] engaged in conduct protected by Title VII;" (2) "the employer took adverse action against [them];" and (3) "a causal link exists between [the] protected conduct and the employer's adverse action." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (citing *Charlton v. Paramus Bd. of Educ.,* 25 F.3d 194, 201 (3d Cir.1994)). While "[o]pposition" to discrimination can take the form of "informal protests of discriminatory employment practices, including making complaints to management[,]" *Moore*, 461 F.3d at 343 (citation omitted), a grievance amounts to protected activity *only* if it relates to "discrimination prohibited by Title VII." *Davis v. City of Newark*, 417 F. App'x 201, 203 (3d Cir. 2011). "A general complaint of unfair treatment" does not suffice. *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995); *see also Davis*, 417 F. App'x at 203. Further, like discrimination claims brought under Title VII, the plaintiff must allege that he or she suffered an adverse employment action. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67 ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.").

In support of dismissal of this claim, Defendants argue that Plaintiff has failed to plausibly allege that he engaged in protected activity or that he suffered the requisite adverse employment action. ECF No. 41-1 at 14–15. With regard to his separation from HPS, Defendants submit that the Amended Complaint is silent as to whether Plaintiff resigned, was terminated, was demoted, etc. *Id.* at 14. The Court agrees.

Upon review of the Amended Complaint, the Court is unable to locate *any* factual allegations to suggest that Plaintiff suffered an adverse employment action.  Plaintiff has not alleged *any* facts to suggest that he was terminated, demoted, or otherwise subject to adverse action by HPS.  Further, the Amended Complaint is silent as to whether Plaintiff engaged in a protected activity—the hallmark feature of a retaliation claim.  Plaintiff alleges only that he made a series of reports concerning the broken entrance.  ECF No. 39 at 4–5.  These allegations are insufficient to raise a reasonable expectation that discovery will reveal evidence of retaliation on the basis of race.  *See Barber*, 68 F.3d at 702.

Therefore, Plaintiff has failed to plausibly allege that he was retaliated against by HPS.  The Court notes the Amended Complaint again suffers greater deficiencies than Plaintiff's original pleading, which alleged that Plaintiff resigned his position out of "duress" and made reference to a series of apparent "grievances" that Plaintiff provided his employer.[5]  *See* ECF No. 1 at 7–17; ECF No. 6 at 1–2.  Accordingly, Plaintiff's retaliation claim will be dismissed against HPS with prejudice.

---

[5] Plaintiff's original pleading and subsequent filings also referenced a series of grievances to his employer.  Broadly construed, Plaintiff's grievances appear to have taken issue more generally with the broken entrance gate at the Jobsite, a lack of communication with his supervisors, his hours, and his duties.  *See* ECF No. 1 at 3, 7–17; ECF No. 6 at 1–2.  Where Plaintiff takes issue with his duties, his chief complaint appears to be that other departments are not helping the security guards.  *See id.* at 13 ("Housekeeping department . . . and PGW should get necessary help for security."); *id.* at 14 ("I get no help from management/Housekeeping department.").  But these grievances do not suggest that Plaintiff was forced to resign or that he was subjected to any adverse employment action.  Nor did Plaintiff allege as much.  On that basis, the Court determined that Plaintiff's singular allegation that he "resigned under duress[,]", ECF No. 1 at 3, was insufficient to raise a reasonable expectation that discovery will reveal evidence that Plaintiff was subject to an adverse employment action. However, the Court determined that, even assuming that the grievances constituted some kind of protected activity, the content of the grievance letters failed to raise a reasonable expectation of a connection between Plaintiff's protected activity based on race and an adverse employment action and dismiss Plaintiff's retaliation claim.  ECF No. 35 at 6–7.

11

### 4.  Disparate Treatment

As discussed *supra* at Part IV(A), Plaintiff's Amended Complaint, broadly construed, sets forth a claim for disparate treatment under Title VII.  *See* ECF No. 39 at 3–5.  In the Amended Complaint, Plaintiff alleges that he was treated differently because of his race.  *Id.* at 4–5.  While Defendants do not squarely address a disparate treatment theory of liability in their motion papers, Defendants do argue *generally* that Plaintiff fails to plausibly allege any nexus between his race and his conditions or status of employment with HPS.  *See* ECF No. 41-1 at 5, 12.

As relevant here, to state a claim for disparate treatment under Title VII, the plaintiff must plausibly allege "four elements, the last of which is that he suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination, such as where the employer treated a similarly situated employee who was not a member of the plaintiff's protected class more favorably."  *Weir v. Univ. of Pittsburgh*, No. 22-3392, 2023 WL 3773645, at *2 (3d Cir. June 2, 2023) (citations omitted).

To the extent that the Amended Complaint sets forth a disparate treatment claim, that claim will be dismissed.  As discussed *supra* at Part III(B)(3), Plaintiff does not allege that he suffered an adverse employment action.  Apart from this deficiency, the Amended Complaint otherwise fails to provide facts from which the Court can determine whether Plaintiff has raised a plausible claim of disparate treatment based on race.  Plaintiff only alleges, in a conclusory fashion, that he was treated differently because he is Black.  *See* ECF No. 39 at 5.  This allegation is insufficient to raise a reasonable expectation that discovery will reveal evidence of retaliation based on race.

### C. Insufficient Service of Process

As the Court has already determined that Plaintiff's Amended Complaint will be dismissed with prejudice for failure to state a claim against either Defendant, the Court need not reach Defendant's arguments regarding improper service.

### V.    CONCLUSION

For the reasons set forth above, this Court will **GRANT** Defendants' Motion to dismiss Plaintiff's Amended Complaint (ECF No. 41).  Plaintiff's Motion to Proceed (ECF No. 45) will be **DENIED**.  Plaintiff's Motion Not to Dismiss (ECF No. 46) has been construed as an opposition to Defendants' Motion to Dismiss.  Plaintiff's Amended Complaint (ECF No. 39) will be **DISMISSED with prejudice**.  An appropriate Order will follow.

BY THE COURT:

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**